IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LOUIS ANTONIO THOMPSON, JR. | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-11-428 |
| BOBBY P. SHEARIN and D. BECKER | * | |
| | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Pending is Defendants' Motion to Dismiss or for Summary Judgment. ECF No. 22. Plaintiff opposes the motion. ECF No. 23. Upon review of the papers filed, the Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2011).

### Background

Plaintiff Louis Thompson, Jr. ("Thompson"), a prisoner confined at North Branch Correctional Institution (NBCI), claims he was threatened with bodily harm and death by members of a Security Threat Group (STG) known as the Crips in June, 2010. Thompson states he was sitting in the medical department waiting to see the dentist when he was threatened. He claims the Crips have been trying to kill him because he was interviewed by members of a special investigation unit and provided a written statement regarding an officer who was killed by the gang at Jessup Correctional Institution (JCI). Thompson alleges he wrote emergency warnings and "snitch notes" which were provided to Captain Easton at JCI and warned that members of the Crips, Dead Men Inc. (DMI), and the Black Guerilla Family (BGF) were planning a riot during which correctional officers in B-Building at JCI would be attacked. Thompson claims he informed on the STGs a few weeks in advance of the planned riot in order

to give JCI staff time to prevent the attacks, but he was betrayed by Easton. Thompson claims he then found out that Easton was a gang sympathizer and a "patriot" who worked with the high-ranking gang members when Easton gave his notes to the captain of the "cam-bones" sect of the BGF, who are responsible for all murder and killing contracts. Thompson claims all the members of this sect are serving life sentences and are permitted to join the cam-bones only if they are proven killers. The captain of this sect was confined in the cell next to Thompson's cell. Thompson claims he witnessed Easton giving the notes to the BGF captain and heard him giving Thompson's name and identification number, enabling the gang to track him down from one prison to another. ECF No. 1 at p. 4.

Thompson states that on November 30, 2010, case management investigated his claim regarding being targeted by gangs and he was asked to prove his claim by providing the names of all "enemy gang members." He states he has been assaulted five different times in five different prisons by members of BGF cam-bones, DMI, Crips and Bloods. Thompson claims the case management team recommended his transfer to another prison for purposes of assigning him to protective custody, but the warden disapproved the recommendation and removed him from administrative segregation pending protective custody status. *Id*.

Thompson further states that he is 58 years old and has served 25 years on a 40 year sentence. He claims it is a violation of his constitutional rights to be "stuck" at NBCI on administrative segregation where he cannot earn diminution of confinement credits to shorten what is left of his sentence. Thompson claims he has only had two infractions in the last 15 years. Just before receiving the second infraction, he claims he was attacked by gang members and his shoulder was broken in two different places. ECF No. 1 at p. 6. He claims at the time of the assault he had stitches in his shoulder from a previous assault and could not fight his

assailants off. Despite his inability to fight back, Thompson claims he was unjustifiably given 180 days of lock-up in 2008 and transferred to NBCI from Western Correctional Institution (WCI) by Lt. Hall. He claims this transfer was done in order to protect him from further assaults by gang members. *Id*. at p. 7. As relief, Thompson seeks a transfer from NBCI to either a medium security prison in Maryland or to an out-of-state facility through the Interstate Corrections Compact (ICC). *Id*. at p. 8.

Upon this Court's initial review of Thompson's allegations, counsel for the Division of Correction (DOC) was directed to show cause why his request for injunctive relief should not be granted. ECF No. 10. Defendants explain that Thompson has a history of attempting to manipulate housing assignments by claiming his life is in danger. They claim Thompson made such a claim at WCI prior to his transfer to NBCI, but his claims were found to be "baseless." When Thompson arrived at NBCI he was assigned to disciplinary segregation, with the segregation sentence beginning December 28, 2010. Thompson's segregation sentence expired on February 18, 2011, and he was scheduled to be release to general population. Thompson protested the move and was placed on administrative segregation pending an investigation into his claims that there were inmates in general population who intended to harm him. ECF No. 14 at Ex. A.

The investigation revealed that none of Thompson's claims could be verified because he could not provide actual names of the inmates who presented a threat to him, only nicknames that could not be attributed to anyone. ECF No. 22 at Ex. A. During the six month[1] investigation, Thompson was assigned to administrative segregation. *Id*. The gang names referenced by Thompson could not be traced to actual persons confined at NBCI. Finding no

---

[1] Thompson was assigned to administrative segregation pending investigation from June 9, 2010 to December 1, 2010.

basis for Thompson's claims, Defendants removed him from administrative segregation, but he refused to go back to general population, resulting in an adjustment charge for refusing to be moved. *Id*. Thompson remained on disciplinary segregation until February 17, 2011, when he was released into general population. *Id*. Thompson again claimed his safety was jeopardized and he was placed back on administrative segregation on February 23, 2011, while his claims were again investigated. *Id*. When the new claims could not be substantiated, Defendants released Thompson from administrative segregation to general population on March 22, 2011. *Id*. Since his release to general population there have been no reports of any assaults or threats made toward Thompson. *Id*.

Thompson was directed to file a reply providing additional evidence indicating he is facing a current, imminent threat to his safety at NBCI. ECF No. 15. Thompson's reply to Defendant's allegations expands his claim of being the target of a threat to a more generalized danger. ECF No. 16. Thompson claims that in May, 2011, his cell-mate found out he was a snitch because of papers he saw in Thompson's locker and heard from "other gang members" that Thompson is gay. *Id*. at pp. 4 – 5. Additionally, he claims his cell-mate had someone check into Thompson's background and found out he is serving time for rape. *Id*. Based on that information, Thompson's cell-mate threatened to kill Thompson if he did not get out of the cell. The cell-mate told him to start pounding on the door to get an officer's attention so he could ask for protective custody. Thompson's cell-mate explained that all the prison gangs have a code of law mandating that all gay prisoners, snitches, child molesters and rapists don't belong in general population and should be beaten or killed if they are not moved to protective custody. *Id*. at p. 5. Thompson complied with his cell-mate's directive and an officer moved him from the cell, but then accused him of being a liar when it was discovered there were no enemies listed for

Thompson on the computer. When Thompson returned to the same cell, his cell-mate threatened him with a knife and stole all of his property. *Id*. at pp. 6 – 7. Thompson goes on to allege that Warden Shearin is corrupt and in "cohoots" with the gangs that have threatened his life. He also claims he has been diagnosed as mildly retarded and suffers from Post-Traumatic Stress Disorder (PTSD) as a result of serving in Vietnam in 1971. *Id*. at pp. 11 – 12. Defendants counter Thompson's Reply by pointing out that he has managed to live in general population without incident since his removal from segregation in March, 2011. ECF No. 21 and 22.

**Standard of Review**

Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to….the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Thompson must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the

penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833– 34 (1994) (citations omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id* at 837; *see also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997). "[T]o survive summary judgment, [Thompson] must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future." *Farmer*, 511 U.S. at 846.

Defendants assert that Thompson's allegations are unverifiable and that he has been assigned to general population for more than six months without incident. ECF No. 22 at Ex. A. Thompson does not admit that he is currently assigned to general population. ECF No. 23 at p. 15. Instead, he references plans to "throw him back" into general population because there is no protective custody housing at NBCI. He goes to great lengths to explain how he was a medium security inmate housed in a medium security prison prior to his transfer to NBCI and that he only needs five points to qualify for medium security again. *Id*. Thompson goes on to state that the warden could simply override the five points and allow him to be transferred to a medium security prison. All references to threats made to his personal safety concern the incidents already described in earlier documents. Thompson has not alleged that there is a continuing,

ongoing threat to his safety. Indeed, his focus is on his perception that it is unfair for him to be in a maximum security prison with prisoners serving life sentences who have "nothing to lose."

Of the many difficulties in managing prisons rife with acts of violence, perhaps the most difficult is discerning who is actually at risk of being harmed and who is simply taking advantage of a dangerous environment to manipulate a change in housing status. This Court is mindful of its limitations in making such determinations. The lack of any evidence that Thompson has experienced any renewed threats to his safety since his assignment to general population places the instant case squarely within the ambit of decisions best left to prison officials. It is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *see also Veney v. Wyche,* 293 F.3d 726, 734 (4th Cir. 2002) (cell assignment decisions).

Placement of Thompson on administrative segregation pending investigation of his claims for six months and again for another month is not evidence of deliberate indifference to his safety. His concerns and claims were taken seriously and diligent efforts were made to determine whether there was a valid basis for his fears. Defendants' conclusion that Thompson is attempting to manipulate housing assignments through his claims is supported by the record in this case. Thompson's pleadings make clear his primary goal of obtaining a transfer to a lower security prison. ECF No. 16 and 23. Thus, the Court findd that Defendants' decision to remove Thompson from administrative segregation and place him back into general population was made after careful consideration of the circumstances involved.

The undisputed facts in this case do not support the injunctive relief sought by Thompson. Defendants are entitled to summary judgment in their favor, which shall be granted by separate Order which follows.

October 25, 2011

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE